IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES CABLAY AND KATHRYN S. F. CABLAY,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA, N.A.,<br><br>        Defendant.<br>_____ | CIVIL NO. 12-00648 JMS-KSC<br><br>ORDER GRANTING MOTION TO DISMISS COMPLAINT |

## ORDER GRANTING MOTION TO DISMISS COMPLAINT

### I.  INTRODUCTION

On December 4, 2012, Plaintiffs James Cablay and Kathryn S.F. Cablay ("Plaintiffs") filed this action against Defendant Bank of America, N.A. ("Defendant") alleging state law claims in connection with two mortgages currently owned and serviced by Defendant and secured by real property located at 99-1184 Aiea Heights Drive, Aiea, Hawaii (the "subject property").

By the instant Motion, Defendant seeks dismissal of all counts with prejudice, contending that Plaintiffs failed to state a claim upon which relief can be granted.  The court GRANTS the Motion with prejudice as to Counts I, II, and IV and with leave to amend as to Count III.

## II. BACKGROUND

A.  **Factual Background**

The court assumes the Complaint's factual allegations are true for purposes of this Motion. *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). According to the Complaint and its exhibits, on February 25, 2008, Plaintiffs entered into two loan agreements secured by the subject property. Doc. No. 1, Compl. ¶ 2; Doc. No. 1-1, Pls.' Ex. 1; Doc. No. 1-2, Pls.' Ex. 2. The first loan, for $625,000, was recorded in the Hawaii Bureau of Conveyances on February 29, 2008 as Document Number 2008-031109 ("the First Mortgage"). Doc. No. 1, Compl. ¶ 2; Doc. No. 1-1, Pls.' Ex. 1. The second loan was a $160,750 home equity line of credit, recorded as Document Number 2008-031110 ("the Second Mortgage"). Doc. No. 1, Compl. ¶ 2; Doc. No. 1-2, Pls.' Ex. 2. Both Mortgages identify Plaintiffs as the borrowers and Countrywide Bank, F.S.B.[1] as the lender. Doc. No. 1, Compl. ¶ 2; Doc. No. 1-2, Pls.' Ex. 2.

Plaintiffs imply that they have defaulted on the Mortgages and foreclosure on the subject property has occurred. *See* Doc. No. 1, Compl. ¶ 34(b) (alleging Defendant's conduct included "charging excessive or improper fees for

---

[1] Plaintiffs allege that Defendant is the successor in interest to Countrywide Bank, F.S.B. Doc. No. 1, Compl. ¶ 7.

default-related services"); *see also id.* ¶ 68 ("The harm sustained by [Plaintiffs] includes . . . unaffordable mortgages, threatened loss of home, and loss of home[].").

Plaintiffs filed the instant action contending that Defendant's conduct in connection with the origination and servicing of the Mortgages was unfair and deceptive and violated an implied covenant of good faith and fair dealing. Defendant's allegedly unfair and deceptive conduct includes:

> a. failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;
>
> b. charging excessive or improper fees for default-related services;
>
> c. failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;
>
> d. imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage;
>
> e. providing borrowers false or misleading information in response to borrower complaints; [and]
>
> f. failing to maintain appropriate staffing, training, and quality control systems.

*Id.* ¶ 34. Plaintiffs further allege that Defendant's allegedly "unfair and deceptive practices" "caused [Plaintiffs] to enter into an unaffordable mortgage loan that led

to increased threat of foreclosure." *Id.* ¶ 37.

**B.     Procedural Background**

On December 4, 2012, Plaintiffs filed a Complaint asserting the following Counts:  (1) Count I -- Breach of Implied Covenant of Good Faith and Fair Dealing; (2) Count II -- Tort Liability for Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Count III -- Unfair and Deceptive Consumer Practices with Respect to Loan Servicing; and (4) Count IV -- Unfair and Deceptive Consumer Practices with Respect to Loan Origination.  Doc. No. 1, Compl. at 9-12.

Plaintiffs seek injunctive relief restraining Defendant from further unlawful conduct; disgorgement of unlawful gains; compensatory and punitive damages; restitution; and attorney's fees and costs.  *Id.* at 12-13.  On January 25, 2013, Defendant filed a Motion to Dismiss Complaint.  Doc. No. 7.  On March 27, 2013, Plaintiffs filed an Opposition, and on April 8, 2013, Defendant filed a Reply.  A hearing was held on April 23, 2013.

### III.  STANDARDS OF REVIEW

**A.     Rule 12(b)(6):  Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  A Rule

12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, ---F.3d---, 2013 WL 1092793, at * 4 (9th Cir. Mar. 14, 2013) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

**B.   Federal Rule of Civil Procedure 8**

Additionally, the court may dismiss a complaint for failure to comply with Federal Rule of Civil Procedure 8. Rule 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed for failure to satisfy Rule 8. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)). Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. *See McHenry*

*v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179.

## IV. <u>ANALYSIS</u>

Defendant contends that Plaintiffs failed to state a claim for violation of both the Hawaii Unfair and Deceptive Business Practice Act ("UDAP"), codified as Hawaii Revised Statutes ("HRS") § 480-2, and an implied covenant of good faith and fair dealing. The court addresses each Count in turn.

A.  **Counts I & II -- Breach and Tortious Breach of Implied Covenant of Good Faith and Fair Dealing**

Count I is entitled "[Defendant's] Breach of Implied Covenant of Good Faith and Fair Dealing," and Count II is entitled "Tort Liability for [Defendant's] Breach of Implied Covenant of Good Faith and Fair Dealing." Doc. No. 1, Compl. at 9-10. Plaintiffs allege that "[e]very contract or duty" governed by HRS Chapter 490 "imposes an obligation of good faith in its performance and enforcement," *Id.* ¶¶ 39, 50 (quoting HRS § 490:1-304), and that Defendant's "duty" of good faith and fair dealing "is derivative of the Mortgage contracts." *Id.* ¶¶ 41, 52. Plaintiffs further allege that they "were harmed" when Defendant failed to meet Plaintiffs' reasonable expectations by not exercising its discretionary power in good faith, but rather "unfairly interfered with [Plaintiffs'] right to receive the benefits of the [mortgages]." *Id.* ¶¶ 45-47, 56-58.

Both of these claims assert the tort of "bad faith." *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). But, as this court has explained in numerous previous orders, *see, e.g., Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1139 (D. Haw. 2012); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1092-93 (D. Haw. 2011), the tort of bad faith has not been recognized in Hawaii based upon a

mortgage loan contract.  *See Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996),] requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action.  *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed."  *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998)

("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, to the extent Plaintiffs base Counts I and II on pre-contract activities (conduct that "caused [Plaintiffs] to enter into an unaffordable mortgage loan"), Defendant cannot be liable for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted).[2]

---

[2] Nothing in the Complaint suggests that Defendant violated the terms of either the First or Second Mortgage in connection with default and foreclosure proceedings.

"The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" *Id.* (quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).[3]

Accordingly, Counts I and II are DISMISSED. Because further amendment would be futile, dismissal of Counts I and II is without leave to amend.

## B. Counts III and IV -- Unfair and Deceptive Acts and Practices

Plaintiffs allege that Defendant is liable for unfair and deceptive acts and practices in connection with loan servicing (Count III) and loan origination (Count IV). Doc. No. 1, Compl. at 11-12. Plaintiffs base both Counts on the same allegations of wrongdoing including: (1) "failing to timely and accurately apply payments . . . and maintain accurate account statements;" (2) "charging excessive

---

[3] Plaintiffs allege that their "reasonable expectations were not met" by Defendants' "unfair[] interfere[nce] with [Plaintiffs'] right to receive the benefits of the contracts," presumably retention of the subject property. Doc. No. 1, Compl. ¶¶ 45, 46, 56, and 57. Plaintiffs imply that numerous federal initiatives that they list under the heading "The United States' Stimulus/Rescue Efforts," created a reasonable expectation that Defendant would modify Plaintiffs' mortgages, thereby avoiding foreclosure. Doc. No. 1, Compl. ¶¶ 17-29. Some or all of these initiatives arise from the Emergency Economic Stabilization Act of 2008 ("ESSA"), 12 U.S.C. § 5201, *et seq.*, which authorizes the U.S. Treasury to promulgate mortgage modification programs including, for example, the Home Affordable Modification Program ("HAMP"). 12 U.S.C. § 5219(a)(1). However, neither ESSA nor HAMP provides a private right of action against lenders who refuse to modify mortgages. *See, e.g.*, *Singh v. Wells Fargo Bank*, 2011 WL 66167, at *7 (E.D. Cal. Jan. 7, 2011) (collecting cases); *see also Gonzalez v. First Franklin Loan Servs.*, 2010 WL 144862, at *18 (E.D. Cal. Jan. 11, 2010); *Santos v. Countrywide Home Loans*, 2009 WL 3756337, at *2 (E.D. Cal. Nov. 6, 2009). Absent the ability to enforce guidelines promulgated under ESSA or HAMP, Plaintiffs' reliance on these initiatives as the basis for their alleged "reasonable expectations" is misplaced.

or improper fees;" (3) "failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;" (4) imposing force-placed insurance without notif[ication];" (5) providing . . . false or misleading information;" and (6) "failing to maintain appropriate staffing, training, and quality control systems." *Id.* ¶ 34. In addition, Plaintiffs allege that "[i]n the course of their origination of [Plaintiffs'] mortgage loans . . . [Defendant] has engaged in a pattern and practice of unfair and deceptive practices . . . [that] caused [Plaintiffs] to enter into an unaffordable mortgage loan[.]" *Id.* ¶ 37.[4]

### 1. *Sufficiency of Factual Allegations*

Defendant contends that Plaintiffs failed to allege specific facts sufficient to state a plausible claim. The court agrees. None of the allegations provides anything more than vague, conclusory statements. Plaintiffs failed to include any facts connecting specific acts or omissions by Defendant to the origination or servicing of Plaintiffs' First or Second Mortgage. Rather, Plaintiffs' allegations of wrongdoing appear to be general complaints against the banking industry on behalf of multiple borrowers. *See* Doc. No. 1, Compl. ¶ 34.

For example, Plaintiff fails to allege: (1) that *Plaintiffs* made

---

[4] Although clearly applicable to Count IV (Unfair and Deceptive Consumer Practices with Respect to Loan Origination), this allegation is also incorporated into Count III (Unfair and Deceptive Consumer Practices with Respect to Loan Servicing). Doc. No. 1, Compl. ¶¶ 60, 66 (incorporating ¶ 37 into each Count).

payments of certain amounts on specific dates that *Defendant* did not apply in a timely and accurate manner to either the First or Second Mortgage; (2) what specific fees were charged in servicing these specific Mortgages; (3) the identity and role of third party vendors employed by Defendant in connection with Plaintiffs' Mortgages; (4) that Plaintiffs purchased duplicate insurance, for what price, and the details of allegedly adequate coverage already in their possession; (5) specific false or misleading information provided by Defendant to Plaintiffs in response to a specific complaint; or (6) any specific information concerning whether or not Defendant maintained inadequate staffing, training or quality control systems and how these matters constitute an unfair and deceptive practice.

        In short, Plaintiffs' allegations as to Counts III and IV do not meet the requirements of Rule 8.  The absence of specific factual allegations leaves only "naked assertions" that are no more than "the-defendant-unlawfully-harmed-me accusation[s]" that "will not do" to state a claim upon which relief can be granted.  *Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiffs' allegations fail to meet Rule 8's general pleading requirement.[5]

---

[5] It is not clear whether Plaintiffs are alleging fraud.  Should they choose to amend their Complaint to include allegations of fraud, Rule 9's particularity requirement would apply.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120,
(continued...)

### 2. *Elements of a Claim that Defendant Violated HRS § 480-2*

Alternatively, even if Plaintiffs' Complaint contains sufficient factual allegations to survive Rule 8 scrutiny, Plaintiffs' allegations fail to state a plausible UDAP claim. Both Counts III and IV allege violations of UDAP, which makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." HRS § 480-2(a). The Hawaii Supreme Court "has described a deceptive act or practice as having the capacity or tendency to mislead or deceive." *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 261, 141 P.3d 427, 434 (2006) (citation and quotation marks omitted). More specifically, under Hawaii law, "a deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under circumstances where (3) the representation, omission, or practice is material." *Id.* at 262, 141 P.3d at 435 (adopting three-part test set forth in *In re Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984) (quotation and alteration signals omitted); *see FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id.* (citing

---

[5](...continued)
1122 (9th Cir. 2009), to find that HRS Ch. 480 claims that sound in fraud must be pled with particularity).

*Novartis Corp. v. FTC*, 343 U.S. App. D.C. 111, 223 F.3d 783, 786 (D.C. Cir. 2000)).

Section 480-13 provides a private right of action for § 480-2 violations.[6] Pursuant to § 480-13, a successful UDAP claim must establish "four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 455, 228 P.3d 303, 325 (2010).

Without more, Plaintiffs' allegations do not state a claim under HRS § 480-2. Plaintiffs utterly fail to allege facts establishing some of the essential elements of a UDAP claim. For example, without allegations of a specific, material representation, omission, or practice "that is likely to mislead," Plaintiffs cannot establish the first prong -- a violation of Chapter 480.

Furthermore, in granting summary judgment against a borrower on a § 480-2 claim, this court in *McCarty v. GCP Management, LLC*, 2010 WL

---

[6] Section 480-13(a) provides a right of action for "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter," and section 480-13(b) provides a right of action for "[a]ny consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2." HRS § 480-13(a), (b). Remedies include injunctive relief, damages, attorney's fees and costs. *Id.*

4812763 (D. Haw. Nov. 17, 2010), relied on the general rule that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 6 (quoting *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. App. 1991)). Nothing in the Complaint indicates that Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." Counts III and IV fail on that basis alone.

### 3. *Effect of Defendant's Relationship to Countrywide Bank, F.S.B.*

Plaintiffs allege that Defendant's unfair and deceptive conduct "caused [them] to enter into an unaffordable mortgage loan[.]" Doc. No. 1, Compl. ¶ 37.

Chapter 480 "provides for a cause of action against a 'person, firm, company, association or corporation' that actually committed an unfair and deceptive trade practice." *Araki v. Bank of Am.*, 2010 WL 5625970, at *6 (D. Haw. Dec. 14, 2010) (quoting HRS § 480-3.1). Plaintiffs acknowledge that Countrywide Bank, F.S.B., not Defendant, was the originating lender of the First and Second Mortgages. Doc. No. 1, Compl. ¶ 2. Thus, Defendant cannot be liable for unfair or deceptive acts that may have occurred when the loan was consummated. *See Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 895-96 (D.

Haw. 2011). Nor could Defendant be liable as an assignee[7] because § 480-2 liability does not attach "merely because one is an assignee."[8] *Araki*, 2010 WL 5625970, at *6; *see Rodenhurst*, 773 F. Supp. 2d at 896 (noting that "banks cannot be held accountable for unfair or deceptive acts and practices based solely on similar allegations, and more specifically, the allegation that [Bank of America] is related to or has an alleged parent-subsidiary relationship with Countrywide") (citations omitted)).

### 4. *Effect of Statute of Limitations on Count IV*

Finally, even if Defendant could be liable for a UDAP claim in connection with the origination of Plaintiffs' Mortgages, Defendant argues that Count IV is barred by the applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a Chapter 480 claim "unless commenced within four years

---

[7] Plaintiffs allege that sometime after the origination of Plaintiffs' Mortgages, Countrywide Bank, F.S.B. was acquired by Defendant and therefore Defendant is "the successor in interest to CWB." *Id.* ¶ 7.

[8] Plaintiffs do not assert a rescission claim. However, a rescission claim under Chapter 480 would stand against an assignee if the underlying contract is void (if, for example, the consumer lacked capacity to enter into the contract). *See, e.g., Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *4-6 (D. Haw. Dec. 22, 2010) (analyzing whether a defense of incapacity can be asserted against a holder in due course seeking to foreclose, and concluding that a mortgage note that is void under § 480-12 may be subject to such defenses against a subsequent assignee). If a Chapter 480 violation is established, however, rescission under § 480-12 does not necessarily or automatically follow. Rather, a plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must be able to "place the parties in as close a position as they held prior to the transaction." *Skaggs v. HSBC Bank USA, N.A.*, 2011 WL 3861373, at *11 (D. Haw. Aug. 31, 2011).

after the cause of action accrues"). The court agrees. Plaintiffs' cause of action accrued on February 25, 2008, when the First and Second Mortgage transactions were consummated. Plaintiffs' UDAP claim was filed on December 4, 2012, more than nine months after the end of the four year statute of limitation.[9]

Accordingly, Counts III and IV are DISMISSED. Because the court cannot conclude that an amendment to Count III would be futile, the court will allow Plaintiffs an opportunity to amend Count III to attempt to state a § 480-2 UDAP claim in connection with the servicing of their Mortgages.

During the hearing, Plaintiffs conceded that if the court applies *Rodenhurst*, 773 F. Supp. 2d 886 (finding Bank of America cannot be liable for the acts of Countrywide under Chapter 480), amendment of Count IV would be futile. That is, Plaintiffs cannot amend to allege a claim against Defendant based on Countrywide's conduct at the time of the origination of Plaintiffs' Mortgages. Therefore, Count IV is DISMISSED without leave to amend.

## V. CONCLUSION

Based on the foregoing, the Motion to Dismiss Complaint is GRANTED without leave to amend as to Counts I, II, and IV, and with leave to

---

[9] In *Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d 1224 (D. Haw. 2011), this court determined that fraudulent concealment may equitably toll the statute of limitations for claims brought pursuant to Chapter 480. *Id.* at 1229-32. Plaintiffs failed to allege any facts suggesting that equitable tolling could apply.

amend as to Count III.  Plaintiffs are given leave to amend by May 15, 2013.

Leave is granted to amend only the UDAP claim in connection with servicing of

the Mortgages.  Failure to file an amended complaint by May 15, 2013 will result

in automatic dismissal of this action.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, April 25, 2013.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Cablay, et al. v. Bank of Am., N.A., et al.*, Civ. No. 12-00648 JMS-KSC, Order Granting Motion to Dismiss Complaint with Leave to Amend